Velázquez Cajigas, Jueza Ponente
*1149 TEXTO COMPLETO DE LA SENTENCIA
La peticionaria, Cooperativa de Ahorro y Crédito Sabaneña (Coop. Sabaneña o peticionaria), solicita que revisemos la resolución del Tribunal de Primera Instancia, Sala de Yauco, mediante la cual se denegó su solicitud de relevo de la sentencia en rebeldía emitida en su contra. Señala que incidió el tribunal, ya que no se había adquirido jurisdicción sobre ella, se omitió emplazar a una parte indispensable en el litigio y que evidencia descubierta poco después de haberse emitido la sentencia demuestra en forma definitiva que la deuda cuyo pago se ordena en la sentencia se había extinguido mediante pago en el año 1999.
Examinadas las circunstancias particulares del presente caso, expedimos el auto de certiorari, dejamos sin efecto tanto la sentencia como la anotación de rebeldía y devolvemos el caso al tribunal apelado.
I
El 2 de febrero de 2004, la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) emitió una Orden Provisional de Administración para la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco (Coop. Santo Nombre). Mediante dicha orden se colocó bajo sindicatura a la Coop. Santo Nombre. COSSEC como Síndico Administrador de la Coop. Santo Nombre, nombró síndico al Sr. José A. Irizarry Laporte mientras decidía si era factible devolver la Cooperativa Santo Nombre a la administración por sus socios, o si procedería otra disposición.
Eventualmente, COSSEC decidió que no sería posible devolver la Coop. Santo Nombre a la gerencia por sus socios, y que los mejores intereses de los socios de la Coop. Santo Nombre y de COSSEC se servirían si se conseguía transferir los depósitos y sus activos a otra cooperativa mediante contrato de compraventa de los mismos. Como paso preliminar hacia dicho objetivo, invitó a la Coop. Sabaneña para que se familiarizara directamente con la situación operacional de la Coop. Santo Nombre. El arreglo se formalizó otorgando un documento denominado Contrato de Administración de Activos y Pasivos, mediante el cual la Coop. Sabaneña supervisaría las funciones operacionales del día a día de la Coop. Santo Nombre, sujeta a las limitaciones impuestas por COSSEC en el contrato. Esta última era quien retenía la titularidad sobre los activos, pasivos y el ente jurídico de la Cooperativa Santo Nombre. Dicho arreglo se formalizó el 4 de marzo de 2005.
El contrato entre COSSEC y Coop. Sabaneña, se suscribió por el Presidente Ejecutivo de la segunda, Sr. Martín Martínez Pérez y el Presidente Ejecutivo de COSSEC, Sr. Carlos Rubén Cruz Ortiz. Dicho arreglo le permitiría a la Coop. Sabaneña obtener mediante observación directa ün estimado realista de la situación de la Coop. Santo Nombre y decidir si con cierto cambio se podría devolver las operaciones a un patrón operacional eficiente y controlado, de forma que su operación fuese rentable para los socios dueños de la cooperativa. De esa forma podría formular su criterio si le convenía a la Coop. Sabaneña comprar ciertos activos y asumir ciertas obligaciones de la Coop. Santo Nombre. No obstante, repetimos, bajo dicho arreglo, la titularidad sobre los activos y pasivos al igual que el control sobre la entidad legal Coop. Santo Nombre los mantenía COSSEC.
*1150 La Coop. Sabaneña estaba obligada a obtener la aprobación de COSSEC de las decisiones principales respecto a la gerencia. Además, ésta venía obligada a rendir extensos informes respecto la situación de la Coop. Santo Nombre a COSSEC y podía ser removida si ajuicio de COSSEC removerla protegía los mejores intereses de COSSEC y los socios de la Coop. Santo Nombre. En dicha etapa lo que existía era un prospecto de que eventualmente Coop. Sabaneña adquiriese los activos de la Coop. Santo Nombre. El acuerdo no especificaba los términos de una futura compraventa, tales como cuáles activos y cuáles pasivos asumiría el comprador, cómo se valorarían los mismos, cuáles garantías COSSEC proveería al prospectivo comprador y cuáles riesgos legales, tales como responsabilidad por litigios presentes y/o por hechos ocurridos previo a que se formalizara una compra por la Coop. Sabaneña, serían asumidos por COSSEC.
Para lograr ese estimado de la realidad operaciorlal de la Coop. Santo Nombre y recomendar los cambios necesarios, el Sr. Martín Martínez, Presidente Ejecutivo de la Coop. Sabaneña, nombró a varios empleados de esta última para que trabajaran en los predios de la Coop. Santo Nombre en Yauco. Entre éstos se encontraban la Sra. Rosa Cancel, quien fungía como gerente de la oficina, el Sr. Rafael Montalvo, quien mientras trabajaba en la Coop. Santo Nombre se reportaba a la Sra. Rosa Cancel y actuaba como oficial de plataforma, un tercer empleado de nombre Eric y una cuarta persona en el área de cobros. (Testimonio del Presidente de Coop. Sabaneña según acta de la vista de 29 de mayo de 2007, Ap. 13 de la parte recurrida.)
Así las cosas, el 20 de abril de 2005, las señoras Carmen Adela Rodríguez Olivieri y Karen Vélez Rodríguez (demandantes-recurridas) presentaron ante la Subsección de Distrito, Sala de Yauco, del Tribunal de Primera Instancia una demanda sobre cobro de dinero contra la Cooperativa Santo Nombre. En ésta reclamaban que Doña Adela Rodríguez Olivieri era la única heredera de Doña Rosa Elisa Rodríguez Olivieri. Luego de fallecer esta última, Doña Carmen Rodríguez Olivieri llevó a cabo un examen de los documentos dejados por esta última y entre éstos encontró el original de un Certificado de Ahorros por la suma principal de $15,000.00, emitido el 20 de enero de 1998, con fecha de madurez de 20 de enero de 2000, a una tasa de interés de 6.25% anual, pagadero en plazos mensuales. Adujeron que al encontrar el certificado se comunicaron mediante carta en tres ocasiones con la Coop. Santo Nombre, solicitando el pago del mismo y los intereses acumulados, o evidencia de que éste hubiera sido cancelado, sin obtener contestación de la Coop. Santo Nombre. En la demanda solicitan, entre otros, que se dicte sentencia ordenando el pago del certificado y los intereses acumulados.
La demanda que indicaba como único demandado a “Cooperativa de Ahorro y Crédito Santo Nombre de Yauco” y un emplazamiento dirigido a “Cooperativa de Ahorro y Crédito Santo Nombre de Yauco, Calle Dr. Cali.’I¡ Número 14, Yauco, Puerto Rico” fueron entregados a la emplazadora, Sra. Lucrecia González Aponte, quien según su declaración jurada de 27 de enero de 2006, procedió como sigue:

“4. El 5 de mayo de 2005, a eso de las 10:20 de la mañana, me personé en la Cooperativa [de Ahorro y Crédito Santo Nombre de Yauco]. Pregunté a una de las cajeras quién era el gerente o encargado. Me indicó la oficina dónde se encontraba. Me dirigí a la oficina, me presenté al Sr. Rafael Montalvo, le expliqué el porqué de mi visita. Le pregunté si él era la persona encargada de la cooperativa y estaba autorizado para recibir emplazamientos. Me contestó que sí, que ocupaba el puesto de Representante Administrativo de la Cooperativa. Me indicó que se llamaba Rafael Montalvo. Al diligenciar el emplazamiento, él me informó que sabía de qué se trataba. A la entrega del emplazamiento y la demanda el Sr. Rafael Montalvo, no me aclaró que él no era representante de la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco, ni tampoco me informó que él representaba a Sabanacoop. ”

Según certificación jurada, emitida el 30 de abril de 2007 por Carlos Rubén Cruz Ortiz, CPA, CPE, Presidente Ejecutivo de COSSEC, “el 22 de junio de- 2005], efectivo el 1 de julio de 2005,] COSSEC, como síndico de la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco, otorgó un Contrato de Compraventa de Activos y Asunción de obligaciones mediante el cual vendió, cedió, transfirió y entregó a la Cooperativa de *1151 Ahorro y Crédito Sabaneña los activos y obligaciones de la primera. ” Apéndice III del peticionario, pág. 17 del apéndice del recuso de certiorari., en adelante (Ap. pág. 17). No existe indicación en el expediente del presente recurso que el contrato de 22 de junio de 2005 haya sido presentado al tribunal de instancia. Éste no se incluyó en los documentos incluidos en el apéndice del recurso por el peticionario ni por las recurridas.
Ante la incomparecencia de la parte demandada, Coop. Santo Nombre, el 4 de agosto de 2005, a solicitud de la parte demandante-recurrida, el tribunal ordenó la anotación de rebeldía. La hoja de “Anotación de Rebeldía" indica que fue notificada a “Coop. Ahorro y Crédito de Yauco, p/c Representante Administrativo Rafael Montalvo, Calle Dr. Gatell Núm. 14, Yauco, PR 00698”. (Ap. 6, Anejo 7 de la parte recurrida). Su texto dispone lo siguiente:

“ANOTACION DE REBELDIA

Al Honorable Tribunal:

Vista la Moción interesando la Anotación de Rebeldía radicada por la parte demandante y apareciendo de los autos que la parte demandada fue debidamente emplazada con copia de la demanda y emplazamiento y que habiendo transcurrido el término concedido por la Ley para contestar o hacer alegación alguna a la misma, aún no lo ha hecho, procedo a anotar la rebeldía a Coop. Ahorro y Crédito de Yauco.

En Yauco, Puerto Rico, a 4 de agosto de 2005.

Noemí Acosta Cruz

Secretaria General”

La orden del tribunal para que se anotara la rebeldía incluyó, además, el señalamiento de vista para el 6 de septiembre de 2005. Dicho señalamiento no fue notificado por escrito a la parte demandada, Coop. Santo Nombre (Ap. 6, Anejo 8 de la parte recurrida).
El 2 de septiembre de 2005, la demandante-recurrida presentó “Moción Solicitando Sustitución de Nombré” en la cual adujo que en conversación sostenida con el “Sr. Rafael Montalvo, Representante Administrativo de la parte demandada”, éste le había notificado que el 1ro de julio de 2005, Coop. Sabaneña suscribió un contrato adquiriendo los activos y pasivos de la Coop. Santo Nombre. Fundamentado en ello, la demandante-recurrida solicitó al tribunal que “se nos permita la sustitución de nombre de la parte demandada”.
Con fecha de 30 de septiembre de 2005, el tribunal emitió sentencia en rebeldía, indicando que celebró vista el 6 de septiembre a la que compareció la parte demandante-recurrida, acompañada por su representante legal. La parte demandada no compareció, ni compareció abogado en representación de la misma. La sentencia reitera lo alegado en la demanda. En atención a que no se presentó “prueba alguna de pago o que refute las alegaciones de la parte demandante ”, el tribunal declaró con lugar la demanda condenando a “la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco antes, hoy Sabanacoop de Yauco a pagar ... la suma de $15,000.00 de principal, más los intereses mensuales devengados desde febrero de 2000, al 6.25% mensual, hasta su total pago y solvento ”.
El apéndice del peticionario Coop. Sabaneña no incluyó la hoja de notificación de la sentencia y ésta tampoco fue incluida en el apéndice de la parte demandante-recurrida. Ahora bien, la pág. 2 de la Resolución de 17 de agosto de 2007 (Ap. pág. 3), indica que “[l]a misma fue notificada a la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco ”.
El 22 de noviembre de 2005, la representante legal de la parte demandante-recurrida remitió una carta *1152 dirigida como sigue:

“Sabanacoop de Yauco

Antes Coop. Santo Nombre de Yauco

P.O. Box 3047

Yauco, PR 00698-3047

Attn: Sr. Rafael Montalvo y/o Sra. Rosa Cancel Administrador”

En la carta hacía referencia a la sentencia de 30 de septiembre de 2005, indicando que a dicha fecha la sentencia era final y firme. Adujo que la sentencia les condena al pago de $15,000.00 más intereses desde febrero de 2000 a razón del 6.25% mensual. Según la carta, basándose en que han transcurrido 70 meses desde febrero de 2000, les indica que el total adeudado a noviembre de 2005 asciende a $80,625.00.
El 27 de diciembre de 2005, la Coop. Sabaneña presentó “Moción Solicitando Relevo de Sentencia”. En ésta compareció mediante representación legal aduciendo que la sentencia era nula porque Coop. Sabaneña “no ha sido emplazada, ni fue incluida como parte original en el pleito, ni era dueña de los activos de la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco al 5 mayo de 2005. ” Además, que al 20 de abril de 2005, fecha de la presentación de la demanda, y al 5 de mayo de 2005, fecha en que se entregó el emplazamiento en el local de la Coop. Santo Nombre, dicha cooperativa estaba bajo la sindicatura de COSSEC. Argumentó que en tanto que están envueltas dos entidades cooperativas distintas, si se quería traer al pleito a la Coop. Sabaneña, era necesario presentar alegaciones específicas contra ésta y emplazarla, y que ninguno estos dos actos se había hecho. O sea, que dado los hechos particulares del caso, no se podía traer al pleito a la Coop. Sabaneña mediante una sustitución de nombre, sino que era necesario enmendar la demanda añadiendo alegaciones específicas respecto ésta y emplazarla. En cuanto al Sr. Montalvo indicó:

“5. Que la persona a quien supuestamente se entregó el emplazamiento[, el Sr. Montalvo,] no era empleado, gerente administrativo ni general, de la Cooperativa de Ahorro y Crédito Santo Nombre de Yauco ni estaba autorizado por [ésta] para recibir emplazamientos a nombre de dicha Cooperativa. ”

Por lo anterior y el resto de lo aducido en la moción, la Coop. Sabaneña solicitó que a tenor con la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.2, se le relevara de la sentencia, declarando nula la sentencia.
El 31 de enero de 2006, la parte demandante-recurrida presentó una oposición a la solicitud de relevo de sentencia. En esencia argumentó que el Sr. Rafael Montalvo había recibido el emplazamiento y no le había informado que Coop. Santo Nombre estaba en sindicatura y tampoco que él no era empleado de dicha cooperativa. Que posteriormente es que le informa que COSSEC había puesto la Coop. Santo Nombre bajo sindicatura y que eventualmente la Coop. Sabaneña adquirió los activos de ésta.
El 31 de marzo de 2006, la Coop. Sabaneña presentó una segunda moción sobre relevo de sentencia reiterando que el tribunal no había adquirido jurisdicción sobre la persona jurídica Cooperativa de Ahorro y Crédito. Sabaneña. Entre otros alegó que:
“El Sr. Rafael Montalvo no es un representante autorizado de la Cooperativa de Ahorro y Crédito Santo Nombre así como tampoco es un representante autorizado u oficial autorizado para recibir emplazamientos a nombre de Sabanacoop. Simplemente es un empleado que se encontraba en las facilidades de la Cooperativa Santo Nombre en la cual se estaba llevando a cabo un proceso de evaluación para una futura adquisición por *1153 Sabanacoop. ” (Ap. pág. 44).
En atención a lo anterior, volvió a solicitar el relevo de sentencia al amparo de la Regla 49.2, supra, y una declaración de nulidad de la sentencia por falta de jurisdicción sobre Coop. Sabaneña debido a que no fue emplazada conforme a derecho.
El 2 de junio de 2006, la Coop. Sabaneña reiteró la solicitud de relevo. Añadió a sus anteriores alegaciones que existía evidencia documental demostrativa que el dinero representado por el certificado de ahorro había sido retirado por la causahabiente de la parte demandante, Sra. Rosa E. Rodríguez Olivieri. Dicha evidencia incluía un informe preparado el 26 de abril de 2006 el cual detallaba los hechos circundantes al pago del certificado el 20 de enero de 1999. Además del informe se incluyó con la moción, entre otros, una fotocopia del certificado de ahorro endosado para cobro por la Sra. Rosa E. Rodríguez Olivieri, indicando como fecha de cancelación por pago el 20 de enero de 1999. Del informe y la evidencia documental surge que se había pagado el Certificado de Depósito de $15,000.00 utilizando la copia del certificado que retiene la cooperativa que lo emite, tal como se hace cuando el dueño aduce que perdió o no localiza su copia del certificado. Para lo anterior y otra documentación sometida como evidencia del pago, véase Ap. págs. 64-80.
El 12 de junio de 2006, el 4 de agosto de 2006 y el 29 de septiembre de 2006 la parte demandante-recurrida solicitó al tribunal una vista previo a la adjudicación de la solicitud de relevo de sentencia. Se celebró la vista el 29 de mayo de 2007, continuada el 22 de junio de 2007. Luego de éstas, el tribunal ordenó a las partes someter memorando de derecho.
El 17 de agosto de 2007, el tribunal emitió resolución denegando la moción de relevo de sentencia.
Inconforme,.Coop. Sabaneña presentó el recurso de certiorari que aquí consideramos, señalando que incidió el tribunal al:

“A. Denegar la solicitud de relevo de sentencia presentada por Sabaneña y en su consecuencia mantener en toda su fuerza y vigor la sentencia en rebeldía que dictara en contra de ésta en ausencia de jurisdicción adecuada para ello.

B. Dictar sentencia sin haberse incluido en el pleito a la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), una parte indispensable.

C. Mantener en toda fuerza y vigor una sentencia errónea. ”

Las demandantes-recurridas presentaron su alegato en oposición acompañado de un nutrido grupo de documentos. Procedemos a resolver.
II
Discutiremos en conjunto los señalamientos de error, por la sustancial relación entre éstos.
Las Reglas 4.4(e), 13.3, 16.1, 45.1, 45.2(b), 45.3 y 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 4.4 (e), R. 13.3, R. 16.1, R. 45.1, R. 45.2(b), R. 45.3 y R. 49.2, disponen: ■

“Regla 4.4 Diligenciamiento personal.

En los casos aplicables, si el demandado no renuncia al emplazamiento a través del mecanismo dispuesto en la Regla 4.3.1, el emplazamiento y la demanda se diligenciarán conjuntamente. El demandante proporcionará a la persona que haga el diligenciamiento las copias necesarias. Dicha persona, al entregar la 
*1154
copia del emplazamiento, hará constar al dorso de aquélla sobre su firma, la fecha y el lugar de dicha entrega y el nombre de la persona a quien se hizo la misma. El diligenciamiento se hará de la manera siguiente:

(e) A una corporación, compañía, sociedad, asociación o cualquier otra persona jurídica, entregando copia del emplazamiento y de la demanda a un oficial, gerente administrativo o agente general, o a cualquier otro agente autorizado por nombramiento o designado por ley para recibir emplazamientos. (Enfasis suplido.)

Regla 13.3 Retroactividad de las enmiendas.

Siempre que la reclamación o defensa expuesta en la alegación enmendada surgiere de la conducta, acto, omisión o evento expuesto en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original. Una enmienda para sustituir la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, en adición a cumplirse con el requisito anterior, y dentro del término prescriptivo, la parte que se trae mediante enmienda: (1) tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedido de defenderse en los méritos, y (2) de no haber sido por un error en cuanto a la identidad del verdadero responsable, la acción se hubiera instituido originalmente en su contra. (Enfasis suplido.)

Regla 16.1 Acumulación indispensable.

Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

Regla 45. La Rebeldía

Regla 45.1 Anotación.

Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante declaración jurada o de otro modo, el secretario anotará su rebeldía.

Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b). (Enfasis suplido.)

Regla 45.2 Sentencia.

Podrá dictarse sentencia en rebeldía en los siguientes casos:

(a) ...

(b) Por el tribunal. En todos los demás casos, la parte con derecho a una sentencia en rebeldía la solicitará del tribunal ... . Si para que el tribunal pueda dictar sentencia o para ejecutarla se hace necesario fijar el estado de una cuenta o determinar el importe de los daños, o comprobar la veracidad de cualquier aseveración mediante prueba, o hacer una investigación de cualquier otro asunto, el tribunal deberá celebrar las vistas que crea necesarias y adecuadas o encomendar la cuestión a un comisionado. (Enfasis suplido.)

*1155
Regla 45.3 Facultad de dejar sin efecto una rebeldía.

Por causa justificada, el tribunal podrá dejar sin efecto una anotación de rebeldía, y, cuando se haya dictado sentencia en rebeldía, podrá asimismo dejarla sin efecto de acuerdo con la Regla 49.2.

Regla 49.2 Errores, inadvertencia, sorpresa, negligencia excusable, descubrimiento de nueva prueba, fraude, etc.

Mediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

(1) Error, inadvertencia, sorpresa, o negligencia excusable;

(2) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48; (Enfasis suplido.)

(3) fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de una parte adversa;

(4) nulidad de la sentencia; (Énfasis suplido.)

(5) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor, o

(6) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. (Enfasis suplido.)

Esta regla no limita el poder del tribmial para:

(a) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (Énfasis suplido.)

(b) conceder un remedio a una parte que en realidad no hubiere sido emplazada, y (Énfasis suplido.)

(c) dejar sin efecto una sentencia por motivo defraude al tribunal. ”

En el presente recurso se solicitó el relevo de una sentencia dictada en rebeldía bajo los siguientes fundamentos: que no se había emplazado conforme a derecho a Coop. Sabaneña, por lo que la sentencia era nula debido a falta de jurisdicción sobre la persona; que no se había incluido como codemandado a una parte indispensable, COSSEC, por lo que la sentencia era nula; y que existe prueba, no descubierta previo a que se emitiera sentencia, que demuestra que el certificado de depósito fue pagado el 20 de enero de 1999, por lo que no existe un reclamo válido en cobro de dinero. Cada uno de los tres señalamientos es por si razón suficiente para conceder el relevo de una sentencia emitida en rebeldía. Examinado el trámite procesal, concluimos que respecto a cada uno de los tres fundamentos se presentó evidencia y argumentos suficientes para dejar sin efecto la sentencia emitida en rebeldía. Veamos. 
En Neptune Packing v. Wackenhut, 120 D.P.R. 283, 291-294 (1988), el Tribunal Supremo comentó sobre el *1156 relevo de sentencia bajo las Reglas 49.2 y 45.3, supra, como sigue:

“El inciso (1) de la Regla 49.2 dispone que el tribunal, mediante moción y bajo aquellas condiciones que sean justas, podrá relevar a una parte de una sentencia por error, inadvertencia, sorpresa o negligencia excusable. Tanto bajo este inciso como bajo el texto total de la regla, existen requisitos que deben cumplirse para que el tribunal en su discreción conceda el remedio. Bajo el inciso (1) es necesario alegar que se tiene una defensa válida que oponer a la reclamación del peticionario. Fine Art Wallpaper v. Wolff, 102 D.P.R. 451 (1974). ...

Para obtener el relevo tanto bajo este inciso como bajo el (6), es necesario también que el promovente de la solicitud haya sido diligente en la tramitación del caso.” Dávila v. Hospital San Miguel, 117 D.P.R. 807 (1986). ...
El relevo de la sentencia también procede al amparo del inciso (6) de la Regla 49.2. En Sucn. Bravo v. Secretario de Hacienda, 106 D.P.R. 672, 675 (1978), expresamos:
“[S]i bien la Regla 49.2 no es una llave maestra para reabrir a capricho un pleito ya adjudicado, el inciso (6) de dicha Regla es amplio para permitir que se corrija un error a todas luces injusto. Somos Tribunal de Justicia y aunque la justicia se pinta ciega, como símbolo de su imparcialidad, los tribunales que la imparten deben tener los ojos bien abiertos para impedir que ella se frustre. Cuando de hacer justicia se trata, no puede haber moldes técnicos que aprisionen los remedios justos. Para ese fin está el citado inciso (6) de la Regla 49.2, y los hechos ante nos justifican su aplicación. ” (Enfasis suplido.)
Más recientemente, en Imp. Vilca v. Hogares Crea, 118 D.P.R. 679 (1987), expresamos: "[ejstos pronunciamientos recogen la visión jurisprudencial de vanguardia en lo que atañe al ideal de que los casos se ventilen en sus méritos". Entendemos que este es uno de los casos a los cuales se refiere la cita del caso de Sucn. Bravo, donde las circunstancias del caso justifican que se conceda el remedio solicitado.
La justicia se vería frustrada de no conceder el tribunal el remedio solicitado. Imp. Vilca, Inc. v. Hogares Crea, supra; Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494 (1982); Garriga Gordils v. Maldonado Colón, 109 D.P.R. 817 (1980); Banco Popular v. Trógolo & Martínez, 109 D.P.R. 167 (1979); Sucn. Bravo v. Secretario de Hacienda, 106 D.P.R. 672 (1978).
La falta de jurisdicción sobre la persona, ya sea porque nunca se trató de emplazar o por defecto en el emplazamiento, conlleva la nulidad de la sentencia y procede su relevo bajo el inciso (4) de la Regla 49.2, supra. En Llanos v. Banco de la Vivienda, 133 D.P.R. 507 (1993), el Tribunal Supremo reiteró que la falta de un emplazamiento válido conlleva la nulidad de la sentencia como sigue:
“[L]a citación o emplazamiento es el paso inaugural del debido proceso de ley que permite el ejercicio de jurisdicción por el tribunal para adjudicar derechos del demandado. Su adulteración es flagrante violación del trato justo. "Pagán v. Rivera Burgos, 113 D.P.R. 750, 753-754 (1983). Por consiguiente, la indebida notificación a la persona contra la cual se ha instado una acción judicial produce la nulidad de la sentencia dictada por falta de jurisdicción sobre la persona del demandado, ya que "el concepto de jurisdicción in personam está inextricablemente atado al debido proceso de ley". ” Reyes Martínez v. Oriental Federal Savings Bank, 133 D.P.R. 15 (1993).
La controversia principal en el presente caso es si se emplazó a la Coop. Sabaneña al entregársele la demanda y emplazamiento al señor Montalvo, lo que incide sobre la jurisdicción del tribunal con respecto a esta *1157 parte. Los argumentos de la demandante-recurrida indican que el Tribunal Supremo ha adoptado una política muy liberal respecto los requisitos para emplazar las personas jurídicas, tal como se refleja en la opinión Román v. Supermercado Pueblo, 152 D.P.R. 367 (2000). Ei presente caso es muy diferente de la situación en Román v. Supermercado Pueblo, supra. En dicho caso no existía controversia que la demanda y emplazamiento se entregaron al gerente de más alto rango en el local del Supermercado Pueblo en el cual ocurrieron los hechos que generaron la causa de acción. Además, la persona a quien se entregó el emplazamiento y la demanda tenía una clara relación fiduciaria con la personalidad jurídica demandada y fácil acceso a las oficinas y funcionarios que se ocupaban de responder a las demandas. Por lo tanto, el Tribunal Supremo, al examinar la totalidad de las circunstancias, adoptó una interpretación legal liberal. En ésta y otras decisiones, el Tribunal ha adoptado la doctrina de que la personalidad jurídica no puede restringir unilateralmente, mediante designación exclusiva u otro mecanismo, las personas naturales asociadas con la personalidad jurídica llenan que el requisito dispuesto en la Regla 4.4(e), supra.
Ahora bien, tampoco puede concluirse que porque la parte demandante-recurrida denomine, o el individuo que recibió los emplazamientos se autodenomine, “representante administrativo”, ello es suficiente para que el emplazamiento tenga el efecto de que la personalidad jurídica quede emplazada. Corresponde al juez que preside el caso resolver, si la totalidad de las circunstancias llevan a concluir que la entrega del emplazamiento a la determinada persona causaría que las personas naturales con responsabilidad general de defender a la persona jurídica en reclamos legales queden informadas de la demanda. Usualmente ello requiere que a quien se le entrega el emplazamiento sea miembro de la alta gerencia de la persona jurídica, o que por la naturaleza de su función posea suficiente acceso a la representación legal de la persona jurídica, que permita la presentación de una defensa apropiada por la persona jurídica. Examinadas la totalidad de las circunstancias en el caso de autos, concluimos que no es sostenible el considerar que la Coop. Sabaneña había quedado emplazada por la entrega de la demanda y emplazamiento al señor Montalvo.
Tampoco consideramos válido el argumento de las demandantes-recurridas, al efecto de que por el hecho de que en la primera moción de relevo de sentencia la Coop. Sabaneña no incluyera la frase “comparece sin someterse a la jurisdicción del tribunal” resulta en, o configura, una sumisión voluntaria a la jurisdicción del tribunal. Tal frase no es sacramental, menos aún en el contexto de una solicitud de relevo de sentencia. La consideración principal es si se presentan argumentos respecto los méritos de las alegaciones de la parte demandante-recurrida. Un escrito como la moción de relevo de 27 de diciembre de 2005, que solicita que se le releve de una sentencia ya emitida, dictada en rebeldía, por razón de no haberse emplazado a la persona jurídica de Coop. Sabaneña, no es una alegación respecto a los méritos de las alegaciones de la demanda, cuya presentación constituya uña sumisión voluntaria a la jurisdicción del tribunal.
Es un principio básico que para que se adquiera jurisdicción sobre una persona, ésta tiene que ser uno de los demandados, además de recibir el emplázamiento y copia de la demanda. Al presentarse la demanda, la Coop. Sabaneña era una personalidad jurídica distinta de la Coop. Santo Nombre. La demanda no indicó ni incluyó como parte demandada a la Coop. Sabaneña. Tampoco formuló alegaciones que la ataron a las obligaciones contraídas por la Coop. Santo Nombre.
Aun si se hubiera emplazado a la Coop. Sabaneña, una sentencia en rebeldía no puede tomar como hechos o basarse en asuntos no alegados en la demanda. Regla 45, supra. La sentencia en rebeldía sólo puede proveer como remedio lo solicitado en la demanda, o menos; siempre y cuando dicho remedio proceda en derecho de los hechos y materias bien alegados en la demanda. Continental v. Isleta Marina, 106 D.P.R. 809 (1978). La falta de alegación específica en la demanda de algún evento jurídico o relación que transfiera la responsabilidad de la Coop. Santo Nombre a la Coop. Sabaneña conlleva la invalidez de una sentencia emitida en rebeldía que imponga una obligación a la Coop. Sabaneña. (Regla 49.2(4), 49.2(6), supra.)
A dichos efectos, observamos que la sustitución de nombre que el tribunal efectuó como respuesta a la *1158 moción a esos efectos presentada el 2 de septiembre de 2005 es inválida, ya que tiene el efecto de alterar materialmente las alegaciones de la demanda, con el propósito de responsabilizar a una entidad jurídica diferente de la mencionada en la demanda. En el presente caso, la sustitución de nombre que permitió el tribunal, no es una sustitución de nombre válida bajo la Regla 13.3, supra, y la jurisprudencia interpretativa respecto la corrección o sustitución del nombre del demandado. Véase Colón Gandía v. Tribunal Superior, 93 D.P.R. 225 (1966). Lo que aquí se llevó a cabo por fíat de una sustitución fue que se le transfirió la responsabilidad de una parte a un tercero, sin que contra éste se hubiera formulado alegaciones, ni se hubiera emplazado y en crasa violación a su derecho a defenderse y ser oído, todo lo cual violaba el debido proceso de ley de ese tercero. Ejemplo de ello está en que la Coop. Sabaneña ha indicado como defensas: que a la fecha en que se presentó la demanda no era dueña de la oficina o los negocios que se gestionaban en Yauco, en el local conocido como Coop. Santo Nombre, y (2) que existe evidencia descubierta después de emitida la sentencia que demuestra que el certificado de ahorro cuyo pago se solicita en la demanda había sido pagado el 20 de enero de 1999.
Además de lo anterior, está el señalamiento que al momento de presentarse la demanda se omitió una parte indispensable, COSSEC, la personalidad jurídica que tenía la sindicatura de la Coop. Santo Nombre. No es necesario entrar en un análisis detallado de las disposiciones legales que le daban el poder a COSSEC para declarar en sindicatura a la Coop. Santo Nombre. Del expediente del caso no surge que exista controversia respecto que al 20 de abril de 2005, fecha de la presentación de la demanda, y al 5 de mayo de 2005, fecha en que se le entregaron la demanda y emplazamiento al señor Montalvo, el control de los activos y pasivos, y el control legal de los asuntos de la Coop. Santo Nombre ya no pertenecían a los socios de la referida cooperativa ni a las personas previamente seleccionadas por los socios como la gerencia de la Coop. Santo Nombre, sino que COSSEC era la entidad sobre la cual, como síndico, recaían éstos.
Al declarar a la Coop. Santo Nombre en sindicatura y asumir la responsabilidad legal del pago de los depositantes y otros acreedores, según dispone la ley habilitadora de COSSEC, ésta se convirtió en la personalidad legal responsable y con control sobre los asuntos de la Coop. Santo Nombre. En tanto, COSSEC es una entidad legal separada de la Coop. Santo Nombre, pero con control sobre ésta, era necesario incluirla como parte codemandada. Después de todo, a las dos fechas mencionadas, si prevalecía la parte demandante-recurrida, quien tenía que emitir la orden para que se pagara la sentencia era COSSEC, y dada la naturaleza de una garantía gubernamental de los depósitos, COSSEC potencialmente tenía que responder con sus propios fondos si no existieran activos de la Coop. Santo Nombre suficientes para cumplir con sus obligaciones bajo su ley habilitadora. Adjudicar la demanda sin proveerle las garantías del debido proceso de ley a COSSEC para proteger sus intereses, automáticamente conlleva la nulidad de la sentencia. Estamos ante un requisito que no depende para su existencia de regla procesal alguna, ya que proviene directamente de la prohibición constitucional contra la privación de la propiedad sin el debido proceso de ley. Esta garantía está en la Regla 16.1, supra, y la jurisprudencia interpretativa de la figura jurídica de “parte indispensable”. COSSEC no fue demandada ni emplazada, por lo cual no puede mantenerse en efecto la sentencia.
En resumen, se cometieron los errores señalados por la parte peticionaria. Estos errores, y los otros errores antes discutidos, requieren que se declare con lugar la solicitud de relevo de sentencia presentada por la Cooperativa de Ahorro y Crédito Sabaneña. Además, procede que declaremos que esta última y la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico, eran partes indispensables que no fueron emplazadas válidamente, por lo que es nula la sentencia en rebeldía emitida por el Tribunal de Primera Instancia el 30 de septiembre de 2005.
III
Por las consideraciones antes expuestas, se expide el auto de certiorari y se releva de la sentencia emitida el 30 de septiembre de 2005 a la Cooperativa de Ahorro y Crédito Sabaneña. Se declara nula la sentencia antes referida por no haberse adquirido jurisdicción sobre la Coop. Sabaneña y COSSEC, lo que conlleva que quede *1159 sin efecto la anotación de rebeldía. Se devuelven los procedimientos al Tribunal de Primera Instancia para que continúen los procedimientos en forma acorde con lo aquí expuesto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 56
1. Del expediente del presente recurso no se desprenden los términos bajo los cuales se asignaron a estos cuatro empleados a trabajar en los predios de Coop. Santo Nombre, tales como si permanecían como empleado de Coop. Sabaneña, etc. Más importante, tampoco se desprende cómo se distribuía la autoridad decisional entre los cuatro empleados de la Coop. Sabaneña asignados a trabajar en los predios de la Coop. Santo Nombre, la gerencia de la Coop. Sabaneña, la anterior gerencia de la Coop. Santo Nombre, el síndico nombrado por COSSEC y COSSEC como ente jurídico. El Contrato de Administración de Activos y Pasivos sólo hace referencia a la relación entre las personas jurídicas de COSSEC, la Coop. Sabaneña y la Coop. Santo Nombre.
2. La asignación del Sr. Montalvo a la Coop. Santo Nombre era una temporera, en lo que Sabanacoop formulaba una decisión final sobre la adquisición de los activos de Coop. Santo Nombre. En sus funciones permanentes en Sabanacoop, el Sr. Montalvo se reportaba al Presidente de Sabanacoop, Sr. Martín Martínez Pérez.
3. El apéndice, según presentado por la parte recurrida, exhibe varias deficiencias significativas. Éste no cumple con la Regla 74(A) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 74(A), la cual requiere que todas las páginas del apéndice sean numeradas consecutivamente. Muchos de los documentos incluyen dos numeraciones, un número de apéndice y un número de anejo, lo cual hace confusa las referencias a éstos. Además, los documentos incluidos en los apéndices 13 y 14, que presuntamente representan actas de las vistas de 29 de mayo y 22 de junio de 2007 no están firmados por la juez que presidió la vista, ni por la secretaria de sala, y tampoco tienen el sello del tribunal u otra indicación de autenticidad.
4. Además de los tres señalamientos, debemos observar que, aun si ésta fuese válida, procedería modificar la sentencia, al amparo del inciso 6 de la Regla 49.2, supra, para corregir que el interés sobre el principal de certificado es a razón de 6.25% anual, pagadero mensualmente, y no 6.25% mensual como indica la sentencia. Ello, debido a que el tribunal no recibió prueba para respaldar una muy inusual tasa de interés de 6.25% mensual sobre un certificado de ahorro garantizado por una entidad gubernamental, COSSEC, y porque de una lectura del texto del certificado lo que se desprende es una tasa de interés de 6.25% anual, pagadera en plazos mensuales. Además, la sentencia en rebeldía excedió las alegaciones y ruego de la demanda, en los cuales se indicaba “pago a favor de las demandantes de la suma de $15,000.00, sus intereses a razón del 6.25% desde el mes de febrero de 2000 hasta su total pago y solvento”.
5. En la demanda se identificaba a la parte demanda como Compañía ABC H/N/C Supermercado Pueblo.
6. Nótese que de las alegaciones de la demanda no se desprende si la responsabilidad por sentencias basadas en hechos previos a la fecha de la venta por el COSSEC fue retenida por COSSEC o fue asumida por el comprador, la Coop. Sabaneña. En tanto no se incluyó el contrato de 22 de junio de 2005, supra, no estamos en condiciones de determinar si el vendedor o el comprador asumió dicha responsabilidad.